ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X (DJ 2024-062C)

| | | |
|---|---|---|
| KRUPP & CO., INC.,<br><br>Apelada,<br><br>v.<br><br>**JOSÉ M. TORAL MUÑOZ, su esposa CARMEN SILVIA PEREYÓ; sociedad conyugal compuesta por JOSÉ M. TORAL MUÑOZ y su esposa CARMEN SILVIA PEREYÓ**,<br><br>Apelante. | KLAN202500368 | APELACIÓN procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Guaynabo.<br><br>Caso núm.: GB2023CV00656.<br><br>Sobre: restitución de pago de lo indebido y daños y perjuicios. |
| **KRUPP & CO., INC.**,<br><br>Apelante,<br><br>v.<br><br>JOSÉ M. TORAL MUÑOZ, su esposa CARMEN SILVIA PEREYÓ; sociedad conyugal compuesta por JOSÉ M. TORAL MUÑOZ y su esposa CARMEN SILVIA PEREYÓ,<br><br>Apelada. | KLAN202500369 | APELACIÓN procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Guaynabo.<br><br>Caso núm.: GB2023CV00656.<br><br>Sobre: restitución de pago de lo indebido y daños y perjuicios. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 10 de septiembre de 2025.

En los casos consolidados del título comparecen las partes apelantes Krupp & Co (Krupp) y José M. Toral Muñoz (señor Toral)[1], respectivamente, y nos solicitan que revisemos y revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia el 6 de marzo de 2025, notificada en esa misma fecha. Mediante el referido dictamen, el foro *a quo* declaró con lugar la demanda instada por Krupp. En consecuencia, ordenó al señor Toral a restituir a Krupp la suma de $18,841.25, que le fuese

---

[1] También comparece la señora Carmen Silva Pereyó, quien por estar casada con el señor Toral fue incluida como parte demandada, aquí apelante, junto a la sociedad legal de bienes gananciales compuesta por ambos.

entregada mediante cheque en febrero de 2020. A su vez, declaró sin lugar la causa de acción por daños y perjuicios instada por Krupp. Finalmente, concluyó que no procedía la imposición de la partida solicitada por Krupp por concepto de honorarios de abogado.

En su recurso, Krupp nos solicita que revisemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia mediante la cual este determinó que no procedía la imposición de costas relacionado al perito Héctor Delgado.

Por los fundamentos expuestos, **confirmamos** tanto la *Sentencia* como la *Resolución* apeladas.

I

El 23 de agosto de 2023, Krupp, una corporación con fines de lucro creada en el 2001, presentó una demanda contra el señor Toral, quien prestó sus servicios como economista para la aludida corporación durante varios años[2]. En lo pertinente, Krupp alegó que, entre finales del mes de enero y principios de febrero de 2020, el señor Toral informó al Lic. Cintrón-Perales[3] y al señor Juan A. Cancel Alegría[4] que había presentado unas facturas por servicios prestados al señor Rigoberto Figueroa Figueroa[5], y que este no se las había pagado.

En cuanto a lo anterior, Krupp alegó que el señor Toral, entre finales de enero o principios de febrero de 2020, presentó una factura por servicios prestados al señor Figueroa Figueroa, que ascendía a $19,466.25, con fecha del **16 de enero de 2014**. El 21 de febrero de 2020, Krupp pagó al señor Toral la suma de $20,000.00, mediante el cheque #1003. Añadió que esta suma fue pagada en concepto de la cantidad presuntamente

---

[2] *Véase*, apéndice del recurso a las págs. 1-10.

[3] En lo pertinente a la controversia que atendemos, según surge de la demanda, para la fecha de los hechos, el **señor Cintrón Perales (señor Cintrón)** fungía como presidente y principal director ejecutivo de la junta de directores de Krupp; además, era el albacea del fenecido Rigoberto Figueroa Figueroa (señor Figueroa).

[4] Según surge de la demanda, en o para finales del mes de enero o principios del mes de febrero de 2020, el **señor Cancel** fungía como director de la Junta de directores de Krupp. *Íd.*, a la pág. 4.

[5] En lo pertinente a la controversia que atendemos, el **señor Figueroa, previo a su fallecimiento, fue el fundador, único y principal accionista de Krupp**. *Íd.* a la pág. 1.

adeudada, y el restante, por el tiempo transcurrido sin que se hubiera realizado el pago.

Además, alegó que, el **7 de febrero de 2020**, el señor Toral, presentó a los directores de Krupp otra factura por servicios prestados al señor Figueroa y sus corporaciones, allá para el 30 de noviembre de 2015, por la cantidad de $19,205.00. Krupp sostuvo que el señor Toral entregó la referida factura y alegó que el señor Figueroa tampoco la había pagado.

Krupp también alegó en su demanda que, el 2 de mayo de 2023, mientras revisaba unas cajas de documentos, el señor Cintrón encontró un expediente de tamaño legal, el cual contenía el nombre del señor Toral, escrito a manuscrito y en lápiz. Relató que, al abrir el referido expediente, encontró una serie de documentos; entre estos, unas facturas firmadas en original por el señor Toral. Sostuvo que las facturas encontradas el 2 de mayo de 2023, no tan solo eran iguales a las sometidas por el señor Toral en el 2020, y que le fueran pagadas mediante el cheque #1003, sino que contenían, a manuscrito, las palabras "**Paid**, **Cortesía**", y, en algunas, las letras "**N/C**".

En cuanto al presunto descubrimiento, sostuvo que el señor Toral nunca informó que había certificado las facturas en controversia como pagadas, sino que, mediante mala fe, dolo, fraude y engaño, alteró las facturas que sometió en el 2020, para obtener un pago indebido o sin justa causa. Finalmente, en virtud de todo lo anterior, solicitó la restitución del dinero pagado, así como los daños y pérdidas económicas sufridas.

El 5 de septiembre de 2023, el señor Toral presentó su contestación a la demanda[6]. Además de negar las alegaciones principales en su contra, aseveró que no hubo error en el pago hecho por Krupp. Adujo que Krupp conocía que había rendido unos servicios, que había presentado en su día unas facturas y que había anotado en algunas de ellas que las mismas estaban pagas. Entonces, ante la explicación del señor Toral respecto a que esas anotaciones se habían hecho a petición del señor Figueroa,

---

[6] *Véase*, apéndice del recurso a las págs. 17-22.

presidente de Krupp para aquel entonces, bajo promesa de pago, se confirmó en "los libros" de Krupp que nunca llegaron a pagarse, por lo que el señor Cintrón procedió con el pago.

Tras múltiples incidencias procesales, el 19 y 20 de febrero de 2025, se celebró el juicio en su fondo. Sometido el asunto, el 6 de marzo de 2025, el Tribunal de Primera Instancia emitió su sentencia y consignó las siguientes determinaciones de hechos:

1. Krupp & Co., Inc., contrató los servicios del economista José M. Toral Muñoz para la preparación de[l] informe pericial a ser utilizado en un caso contra la Administración de Corrección.

2. Por estos servicios, el doctor Toral Muñoz presentó facturas al Sr. Rigoberto Figueroa Figueroa, presidente de Krupp, a quien le unían lazos de amistad desde 1968.

3. La controversia se ciñe a seis facturas, correspondientes al 10 de abril, 11 de septiembre y 2 de octubre de 2012; 15 de enero y 28 de febrero de 2013, y 14 de enero de 2014.

4. En la factura de 10 de abril de 2012, reclamó $6,186.25 por 49.49 horas de labor realizada entre el 22 de marzo y el 10 de abril de 2012. Tiene la firma del doctor Toral Muñoz al lado inferior izquierdo. Al lado inferior derecho, a manuscrito, reza "PAID", debajo "10 APR/2012", rúbrica en tercera línea, con la expresión "cortesía" en una cuarta línea. El doctor Toral Muñoz reconoció haber suscrito las expresiones "Paid" y "cortesía", más su rúbrica. (Exhibit V de la parte demandante, al folio 49).

5. La factura de 11 de septiembre de 2012, refleja 9.5 horas de labor, correspondientes al 4 y 5 de septiembre de 2012, valoradas en $1,187.50. Al lado inferior izquierdo cuenta con la firma del doctor Toral Muñoz. Al lado inferior derecho, y a manuscrito, indica "Paid", debajo "Cortesía", con su rúbrica en una tercera línea. El doctor Toral Muñoz reconoció haber suscrito las expresiones "Paid" y "Cortesía", más su rúbrica. (Exhibit V de la parte demandante, al folio 19).

6. La factura de 2 de octubre de 2012, por $500.00, corresponde a labor realizada el 18 de septiembre de 2012, sin especificación de horas trabajadas. Al lado inferior central, y a manuscrito, indica "Paid", debajo "Cortesía", con su firma en una tercera línea. El doctor Toral Muñoz reconoció haber suscrito las expresiones "Paid" y "Cortesía", más su firma. (Exhibit V de la parte demandante, al folio 31). Posteriormente, esta labor se desglosó en 4 horas. (Exhibit III de la parte demandante).

7. La factura de 15 de enero 2013, por $625.00, corresponde a 5 horas de labor, con referencia al 22 de marzo de 2012, fecha que parece responder a error. Esta factura no contiene anotación especial al lado de la firma. (Exhibit V de la parte demandante, al folio 18).

8. La factura de 28 de febrero de 2013, por $875.00, corresponde a 7 horas de labor realizada el 27 y 28 de febrero de 2013. Al lado central derecho, y a manuscrito, indica "paid", debajo "cortesía", con su rúbrica en una tercera línea. El doctor Toral Muñoz reconoció haber suscrito las expresiones "paid" y "cortesía", más su rúbrica. (Exhibit V de la parte demandante, al folio 17).

9. La factura de 16 de enero de 2014, corresponde a labor realizada del 8 de octubre de 2013 al 14 de enero de 2014. Refleja un reclamo de $10,092.50 por 80.74 horas trabajadas. La factura es de una página y contiene la firma del doctor Toral Muñoz, precedida de la expresión "CORTESÍA (n/c)". El doctor Toral Muñoz reconoció haber incorporado la expresión "CORTESÍA (n/c)", más definió las siglas "n/c" como no charge. (Exhibit II de la parte demandante).

10. El doctor Toral Muñoz afirma que anotó las expresiones "paid", "cortesía" y "n/c" (no charge), en diversas facturas, a petición del Sr. Rigoberto Figueroa Figueroa, pero que el compromiso fue que se le pagaría por la labor realizada. Que don Rigoberto ofreció dos motivos para su solicitud, facilitar la recuperación de la partida como gastos y enfrentar gestiones de cobro encausadas por suplidores.

11. Abundó que, en dos ocasiones en 2019, recordó a don Rigoberto la deuda contraída, sin lograr la satisfacción del pago.

12. Don Rigoberto falleció el 7 de diciembre de 2019. (Estipulación de hecho 6, informe de conferencia con antelación a juicio).

13. En enero de 2020, el doctor Toral reprodujo la factura de 16 de enero de 2014, en esta ocasión sin la expresión "CORTESÍA (n/c)". Esta versión consta de dos folios, en que se repite la labor realizada. Se distingue también de la factura original en que, en la primera página, consta otra firma, si bien el doctor Toral Muñoz reconoció corresponderle. A su vez, que en la segunda página se incorporó mención resumida de otras cinco facturas de 2012 y 2013, antes detalladas en las determinaciones de hechos 4 a 8, para un reclamo total de $19,466.25. (Exhibit III de la parte demandante).

14. El Lcdo. Rafael Cintrón Perales firmó cheque el 21 de febrero de 2020, por la suma englobada de $20,000.00, a favor del doctor Toral Muñoz. El cheque número 1003 de la cuenta de Krupp 041169176345 en Merrill Lynch, Bank of America, hace referencia a los meses y años de las seis facturas en controversia. (Exhibit IV de la parte demandante).

15. El licenciado Cintrón Perales sostiene que, tres años después, ubicó expediente con las facturas originales, cualificadas con expresiones de "paid", "cortesía y "n/c" (no charge)[7].

Como adelantamos, el foro *a quo* concluyó que el señor Toral había

renunciado, conforme consignó expresamente en cinco de las seis facturas

---

[7] *Véase*, apéndice del recurso, a las págs. 34-42.

objeto de controversia, a su derecho a cobrar por la labor realizada. El foro primario aclaró que la renuncia fue realizada, en la mayoría de las ocasiones, de su puño y letra, por lo que no procedía el pago posterior.

No obstante, el foro primario excluyó la factura correspondiente al 15 de enero de 2013, por $625.00, por no estar cualificada por el señor Toral como servicios rendidos por cortesía. De igual forma, determinó que no procedía la restitución reclamada por la diferencia entre el cheque de $20,000.00 expedido y la suma de $19,466.25 reclamada en las facturas, por tratarse de una liberalidad de la empresa.

Finalmente, ordenó al señor Toral a restituir la suma de $18,841.25, que le fuese entregada mediante cheque en febrero de 2020. A su vez, declaró sin lugar la causa de acción en daños y perjuicios. En cuanto a esta última, expresó que no se presentó prueba alguna a esos efectos.

Entre tanto, el 14 de marzo de 2025, Krupp presentó el memorando de costas certificado por su representante legal[8].

Inconforme con la referida determinación, el 20 de marzo de 2025, el señor Toral presentó una solicitud de determinaciones de hecho adicionales[9]. Por su parte, al día siguiente, Krupp presentó una solicitud de reconsideración[10]. En particular, solicitó al foro primario que reconsiderara en cuanto a si había mediado mala fe y si procedía la imposición de honorarios de abogado.

El 31 de marzo de 2025, el Tribunal de Primera Instancia declaró sin lugar ambas solicitudes[11].

En reacción a la determinación del foro *a quo*, el 30 de abril de 2025, las partes del título presentaron sendos recursos de apelación. En el suyo, el señor Toral formuló los siguientes señalamientos de error:

> Ante versiones encontradas e incompatibles sobre el alegado conocimiento de la parte demandante en febrero de 2020 de las anotaciones hechas por Toral en la factura objeto del

---

[8] *Véase*, apéndice del recurso presentado por Krupp, a las págs. 213-214.

[9] *Véase*, apéndice del recurso presentado por el señor Toral, a las págs. 43-46.

[10] *Véase*, apéndice del recurso presentado por Krupp, a las págs. 221-226.

[11] *Véase*, apéndice del recurso presentado por el señor Toral, a la pág. 47.

caso, erró el Tribunal de Primera Instancia al no permitir que la parte demandada atacara la credibilidad del licenciado Cintrón mediante evidencia de sus intereses en conflicto con los de Toral.

Erró el Tribunal de Primera Instancia al no aceptar las determinaciones de hecho adicionales solicitadas por la parte demandada.

(Énfasis omitido).

Por su parte, en su apelación, Krupp formuló los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera instancia, en su sentencia del 6 de marzo de 2025 al denegar la imposición de honorarios de abogado e intereses por temeridad a la parte perdidosa y resolver que el demandado no actuó de mala fe, lo que a luz de las instancias particulares de este caso resulta contrario a derecho, e incurriendo de esta forma en craso abuso de discreción, actuando con perjuicio o parcialidad, habiéndose equivocado en la interpretación o aplicación de la norma procesal y el derecho sustantivo en cuanto a la imposición de honorarios e intereses, lo que constituye un fracaso irremediable de la justicia.

Erró el Honorable Tribunal de Primera Instancia, en su sentencia del 6 de marzo de 2025, cuando adjudicó que la parte demandante no aduce reclamo de cobro doble, sin tomar en consideración que el propio codemandado Sr. José M. Toral Muñoz de su puño y letra escribió las palabras *"paid, cortesía, n/c"* y también concluir que no medió mala fe de la parte demandada y no imponer honorarios de abogado por alegadamente no mediar temeridad; por lo que sus determinaciones de hecho en cuanto a que no medió mala fe y no imponer honorarios de abogado estaban reñidas con la verdad sobre el hecho incontrovertido de que el codemandado actuó de manera intencional al facturar nuevamente, ocultando que dichas facturas no se adeudaban y cobrando lo indebido a sabiendas de su falsedad por lo que sus determinaciones están en conflicto con el balance más racional, justiciero y jurídico de la controversia, incurriendo en craso abuso de discreción, actuando de ese modo con pasión, perjuicio, parcialidad y error manifiesto.

Erró el Honorable Tribunal de Primera Instancia, en su sentencia del 6 de marzo de 2025 al suprimir el informe del perito forense de la parte demandante Héctor Delgado Rodríguez por alegadamente no ser pertinente y negarle posteriormente imponerle los honorarios del perito por temeridad actuando de ese modo con pasión, perjuicio parcialidad y error manifiesto, contraria al derecho constitucional a que todo ciudadano no se le prive de su propiedad sin un debido procedimiento de ley, al derecho constitucional a la igual protección de las leyes, a un juicio justo y a un remedio completo, lo que resulta en un fracaso a la justicia.

(Énfasis omitido).

Ante la naturaleza de los errores señalados, tras la consolidación de los recursos, autorizamos mediante resolución del 8 de mayo de 2025, que se presentara la transcripción de la prueba oral y sus respectivos alegatos suplementarios. En atención a ello, esta fue estipulada y presentada por las partes el 11 de junio de 2024.

Posteriormente, el 1 de julio de 2025, el señor Toral presentó su alegato suplementario y su oposición a la apelación. Por su parte, Krupp presentó su oposición el 10 de julio de 2025.

Con el beneficio de la transcripción y las posturas de las partes resolvemos.

II

A

Es norma reiterada que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Al definir lo que constituye pasión, prejuicio o parcialidad, el Tribunal Supremo ha expresado que:

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador el que tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Sin embargo, la doctrina de deferencia judicial no es de carácter absoluto; se podrá intervenir "cuando la apreciación de la prueba no

representare el balance más racional, justiciero y jurídico de la totalidad de la prueba". *González Hernández v. González Hernández*, 181 DPR, a la pág. 777.

También, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *Íd.*

B

Para que una evidencia sea admisible debe cumplir con los requisitos que establecen las Reglas de Evidencia. Como primer requisito, toda evidencia debe satisfacer el requisito de pertinencia. Regla 401 de las de Evidencia, 32 LPRA Ap. VI. "En la práctica, evidencia pertinente es la que arroja luz o tiene algún valor probatorio, por mínimo que sea, para adjudicar la acción." E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Ed. Situm, 2016, pág. 72.

"Una vez se establece que la evidencia propuesta es pertinente, esta tiene que cumplir con el requisito de **autenticación**. […] Autenticar implica demostrar que la cosa es lo que la parte propone que es." *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 812 (2020); citando de E. L. Chiesa Aponte, *op. cit.*, pág. 345. (Énfasis nuestro).

La Regla 901 de las de Evidencia, 32 LPRA Ap. VI nos propone una lista ejemplificativa, no taxativa, de los diversos mecanismos para la autenticación de una evidencia; por ejemplo, mediante el testimonio de un testigo con conocimiento; mediante la presentación de evidencia de la letra de la autora o el autor; por la identificación de la voz; por virtud de escritos en contestación; mediante admisión; entre otros.

El testimonio de un testigo con conocimiento de que la evidencia es lo que el proponente sostiene que es constituye el "medio más elemental o fundamental de autenticar una evidencia […]". E. L. Chiesa Aponte, *Compendio de evidencia (en el sistema adversarial)*, Ed. Tyrant Lo Blanch,

México, 2021, pág. 528. Véase, además, Regla 901(b)(1) de las de Evidencia, 32 LPRA Ap. VI.

Además, y en lo pertinente a este recurso, un escrito podrá autenticarse mediante evidencia de que la letra de la autora o autor es genuina. Inclusive, una persona testigo no perita puede expresar su opinión sobre si un escrito es del puño y la letra de la persona que es presunta autora a base de su familiaridad con la letra de esa persona, siempre y cuando dicha familiaridad no se haya adquirido con miras al pleito. Regla 901(b)(2) de las de Evidencia.

Evidentemente, si la prueba propuesta no es debidamente autenticada, no puede ser admitida en evidencia.

De otra parte, conforme a la Regla 105 de las de Evidencia, este foro apelativo no dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni revocará por ello una sentencia o decisión, a menos que: (1) la parte perjudicada con la admisión o exclusión hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida y cuya revocación se solicita.

C

El Código Civil de Puerto Rico[12] regula expresamente el pago de lo indebido en los Artículos 1520 al 1525, 31 LPRA secs. 10751-10756. En atención a ello, podemos afirmar que el pago de lo indebido produce un derecho a restitución. En particular, el Art. 1520 del Código Civil de Puerto Rico dispuso que, quien sin causa jurídica ha hecho el pago de una cosa o cantidad que no debía, tendrá derecho a exigir su restitución de quien lo recibió. 31 LPRA sec. 10751. Asimismo, aclara que "la restitución del

---

[12] Nos referimos al Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, según enmendada, pues, si bien las transacciones que se narran en la demanda - instada el 23 de agosto de 2023 - se suscitaron con anterioridad a que entrara en vigor el nuevo Código, el Art. 1808 de este dispone que las acciones y derechos nacidos antes de su entrada en vigor estarán sujetados, en cuanto a su ejercicio y procedimiento para hacerlos valer, a lo dispuesto en este. 31 LPRA sec. 11713.

referido pago **no** está sujeta a que se haya efectuado con error". *Íd*[13].

(Énfasis nuestro).

De otra parte, el Código Civil de Puerto Rico establece en su Art.

1051 que no habrá obligación de restituir en las siguientes circunstancias:

> (a) si el que recibió el pago goza de la protección de un
> registro o de una norma establecida para garantizar su
> titularidad;
>
> (b) si el pago se hizo para satisfacer una obligación
> judicialmente inexigible; o
>
> (c) si el que recibió el pago, creyendo de buena fe que se
> hacía por cuenta de un crédito legítimo y subsistente, inutiliza
> el título, deja prescribir la acción, abandona o cancela las
> garantías de su derecho. Sin embargo, la persona que realiza
> el pago tiene subrogación legal en sus derechos.

31 LPRA sec. 10752.

Finalmente, dispone que, en los casos en que se alegue pago de lo

indebido, operará una presunción. En específico, se presumirá que hay

error en el pago cuando se entrega una cosa que nunca se debió, se paga

en exceso de lo que se debe o cuando se paga una deuda ya satisfecha.

31 LPRA sec. 10756. No obstante, la persona a quien se pida la devolución

puede probar que la entrega se hizo a título de liberalidad o por otra causa

justa. *Íd.*

### III

Evaluados los recursos, a la luz del derecho aplicable, este Tribunal

concluye que los errores señalados por las partes apelantes del título **no**

fueron cometidos por el foro apelado. En aras de facilitar la comprensión

de este dictamen, discutiremos primeramente los errores señalados por el

señor Toral. Veamos.

En primer lugar, el señor Toral cuestiona la determinación del

Tribunal de Primera Instancia al excluir prueba, presuntamente dirigida a

---

[13] Resulta importante destacar esta disposición dado que, previamente, al analizar la configuración de la doctrina del pago de lo indebido, en *Pagan Santiago et al. v. ASR*, 185 DPR 341, 367 (2012), citando a *Sepúlveda v. Departamento de Salud*, 145 DPR 560, 566 (1998), el Tribunal Supremo de Puerto Rico nos llamaba a atender una serie de requisitos. En particular, que se produjera un pago con intención de extinguir una obligación; que el pago realizado no tuviera una justa causa, es decir, que no existiera obligación jurídica entre quien pagó y quien cobró o, si la obligación existía, que fuera por una cuantía menor a la pagada, y **que el pago hubiera sido hecho por error y no por mera liberalidad o por cualquier otro concepto**.

impugnar la credibilidad del único testigo de Krupp; a saber, el señor Rafael Cintrón Perales. En segundo lugar, sostiene que el foro *a quo* debió emitir declaraciones de hechos adicionales, según le fuera solicitado. En particular, respecto a la captura de pantalla de un mensaje de *WhatsApp*[14], el cual adujo fue admitido en evidencia, sin embargo, fue obviado en las determinaciones de hecho.

En cuanto a su primer señalamiento de error, el señor Toral arguye que, por tratarse de una controversia centrada en la credibilidad de los testigos, el foro primario erró al determinar que la prueba relacionada a otros pleitos entre las partes resultaba impertinente[15]. En su alegato suplementario, relató que la oferta de prueba se realizó tras que, oportunamente, se objetara la pregunta de la representación legal del señor Toral dirigida al testigo Rafal Cintrón en cuanto a si todos sus ingresos provenían del albaceazgo[16]. Adujo que, con la prueba excluida, pudo haber demostrado los intereses ulteriores del señor Cintrón y su intención de defraudar para conseguirlos. Aún más, sostuvo que, si bien el foro primario tomó conocimiento de que existían otros pleitos legales entre las partes, en su apreciación, se limitó a establecer que existía animosidad entre ellas[17]. Finalmente, añadió que la prueba excluida resultaba no solo pertinente, sino admisible al amparo de las Reglas 607, 608 y 609 de la de Evidencia, 32 LPRA Ap. IV.

En síntesis, Krupp sostuvo que el objeto del juicio debía limitarse a determinar si procedía la acción de cobro de lo indebido. En su alegato, arguye que la teoría de que el señor Cintrón, mediante una conspiración institucional con Krupp, fabricó la controversia atendida por el foro *a quo* fue examinada y descartada por carecer de sustento probatorio.

---

[14] *WhatsApp* es una plataforma digital que ofrece, entre otros, servicio de mensajería instantánea.

[15] En sus escritos, hizo particular referencia a la *Sentencia Final* dictada en el caso **BY2023CV00416** y al expediente del recurso **KLCE202301430**.

[16] *Véase*, transcripción de la prueba oral (TPO), a la pág. 34.

[17] *Íd.*, a la pág. 46.

Ahora bien, debemos resaltar que el Tribunal de Primera Instancia tomó conocimiento de la multiplicidad de casos pendientes entre las partes[18]. No obstante, resultó necesario que fuera enfático en que, si bien existían otros pleitos pendientes y resueltos, era imperativo que se delimitaran a atender la controversia pertinente a los procesos que atendía en ese momento[19]. En específico, la acción de pago de lo indebido.

Como discutimos, como primer requisito, toda evidencia debe satisfacer el requisito de pertinencia. En esta ocasión, revisadas tanto las posturas de las partes como la trascripción de la prueba oral a la luz de derecho incumbente, concluimos que la evidencia en cuanto a los demás pleitos pendientes en las partes resultaba pertinente, dado que la normativa evidenciaria solo exige un mínimo. En este caso, los hechos determinantes giraron en torno a que el señor Toral aceptó haber incorporado las palabras: cortesía, *no charge* o *paid* a múltiples facturas. Lo anterior, sin que nadie lo coaccionara o forzara a cualificar las facturas objeto de controversia con la renuncia al cobro por sus servicios, anotaciones que realizó de forma voluntaria.

Por tanto, reiteramos que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece nuestra intervención en este momento para revisar la apreciación de la prueba, ni la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia.

En cuanto a su segundo señalamiento de error, el señor Toral aduce que, si bien el Tribunal de Primera Instancia admitió en evidencia un mensaje de *WhatsApp* del 21 de febrero de 2020, incidió al obviarlo de las determinaciones de hechos consignadas en su sentencia[20]. Arguye que, por tratarse de un hecho material y ser la única prueba documental contemporánea a los hechos, constituyó un abuso de discreción ignorarlas.

---

[18] TPO, a las págs. 34-47.

[19] *Íd.*, a la pág. 45.

[20] *Íd.*, a la pág. 164.

Asimismo, insiste en que el Tribunal de Primera Instancia debió incluir entre sus determinaciones la posición que ostentaba el autor del referido mensaje, Juan Cancel, dentro de la corporación. Sostiene que eran asuntos relevantes para la atención de la controversia que le fue planteada.

En cuanto al referido mensaje, Krupp arguye que el documento no fue autenticado, ni introducido mediante el testimonio directo de su autor. Asimismo, señala que no se planteó ninguna de las excepciones que proveen las Reglas 803, 804 y 807 de la de Evidencia, 32 LPRA Ap. VI. En virtud de ello, concluye que la captura de pantalla del mensaje de *WhatsApp* constituye prueba de referencia múltiple y, por tanto, resultaba inadmisible.

Nos corresponde resaltar que reconocemos que el Tribunal de Primera Instancia aseveró respecto a la aludida captura de pantalla de mensaje en *WhatsApp* que se admitió, a pesar de consignar la objeción de Krupp, conteste con lo anunciado por la representación legal del señor Toral respecto a que se trataba de una admisión de parte tras permitir que las partes argumentaran al respecto[21].

Ahora bien, no podemos perder de vista que los propósitos de la solicitud de determinaciones adicionales que permite la Regla 43.1 de Procedimiento Civil, 32 LPRA Ap. V, son permitir (1) que el tribunal quede satisfecho de que atendió cabalmente todas las controversias, y (2) que las partes y los foros apelativos estén informados de todos los cimientos de la decisión del Tribunal de Primera Instancia[22]. En ese sentido, nos queda claro que las determinaciones de hecho esbozadas por el foro primario, las cuales adoptamos de manera íntegra como si formaran parte de este escrito, cumplen cabalmente con el propósito mencionado. Por tanto, sostenemos la determinación del foro primario al no enmendar su sentencia para incluir determinaciones de hecho adicionales.

---

[21] TPO, a la pág. 164.

[22] Véase, *Morales y otros v. The Sheraton Corp.*, 191 DPR 1,10 (2014).

Discutido lo anterior, atendemos los errores señalados por Krupp en su recurso de apelación.

En síntesis, mediante su primer y segundo señalamiento Krupp sostiene que el Tribunal de Primera Instancia indició al denegar la imposición de honorarios de abogado e intereses por temeridad a la parte perdidosa y resolver que el demandado no había actuado de mala fe. Añade, mediante su tercer señalamiento, que el foro *a quo* erró al suprimir el informe del perito forense contratado por Krupp.

Por estar intrínsecamente relacionados, discutiremos conjuntamente los tres errores esbozados.

En lo pertinente, Krupp sostiene que, a la luz de las instancias particulares de este caso, el Tribunal de Primera Instancia debió concluir e incluir en su sentencia que el señor Toral había alterado las facturas objeto de controversia de forma intencional y deliberada, a sabiendas de su falsedad, y con la intención especifica de cobrar lo indebido. Añade que en virtud de esa conclusión debía modificarse el referido dictamen para imponer el pago del interés legal correspondiente y honorarios de abogado por temeridad. Sostuvo que al resolver lo contrario el foro primario se contradijo.

Por su parte, el señor Toral arguyó que, contrario a lo planteado por Krupp, el Tribunal de Primera Instancia no determinó que este incurriera en una obra fraudulenta o conducta dolosa, sino que su testimonio en el juicio resultaba insuficiente para probar su alegación; ello, en ausencia de algún respaldo probatorio adicional.

Ahora bien, resulta pertinente reiterar que, en cuanto a las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. Por tanto, examinado el trámite, en particular, la transcripción de la prueba oral, concluimos al igual que el foro primario que no procede la imposición de la partida solicitada por concepto de honorarios de abogado, al no mediar

temeridad. Ciertamente, el Tribunal de Primera Instancia reconoció que la controversia giró en torno a un pago por servicios profesionales que fueron realizados, sin remuneración y, a la luz de la **totalidad** de las circunstancias, nos resulta forzoso concluir de igual forma que no medió prueba suficiente para concluir que el señor Toral había obrado de mala fe.

Mediante su tercer señalamiento de error, Krupp propuso que el Tribunal de Primera Instancia erró al suprimir el informe del perito forense Héctor Delgado Rodriguez, y determinar que este no resultaba pertinente.

La Regla 44.1 de Procedimiento Civil provee para el rembolso, a la parte que resulte favorecida por un dictamen, de aquellos gastos considerados necesarios y razonables. 32 LPRA Ap. V. El Tribunal Supremo de Puerto Rico ha reconocido reiteradamente la gran discreción con que cuenta el Tribunal de Primera Instancia para evaluar la razonabilidad y necesidad de los gastos[23]. De igual forma, ha establecido que los gastos de un perito de parte son reembolsables por vía de excepción y solo proceden cuando esté plenamente justificado[24].

Coincidimos con el foro primario respecto a que el reclamo de cualquier gasto relacionado al perito de parte resultaba improcedente, a la luz de la doctrina reseñada. El informe pericial abordaba un asunto aceptado por el señor Toral, por lo que lejos de cumplir con el criterio rector de gasto necesario y razonable, el testimonio del perito resultaba innecesario y acumulativo, por no tratar de una materia en controversia. Aún más, no podemos obviar que de la propia sentencia apelada surge que el Tribunal de Primera Instancia hizo un ofrecimiento de admisibilidad limitada del informe pericial, la cual Krupp rechazó[25].

Ciertamente, ninguno de los argumentos esbozados por Krupp en cuanto a este asunto nos persuade a concluir que el Tribunal de Primera Instancia actuara con pasión, prejuicio parcialidad o error manifiesto, por lo

---

[23] Véase, *ELA v. El Ojo de Agua Development, Inc.,* 205 DPR 502, 529 (2020).

[24] Véase, *Maderas Tratadas, Inc. v. Sun Alliance Insurance Co,* 185 DPR 880, 935 (2012).

[25] *Véase*, apéndice del recurso presentado por el señor Toral, a la pág. 38, nota al calce núm. 1.

que tampoco intervendremos con su determinación en lo que al memorando de costas se refiere.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia el 6 de marzo de 2025. También, confirmamos la *Resolución* emitida y notificada el 31 de marzo de 2025, respecto al memorando de costas.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones